**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| TIMMIE MYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:22-cv-2789-BHH-MGB |
| vs. | ) | **COMPLAINT** |
| | ) | *(Jury Trial Demanded)* |
| SUMMERVILLE POLICE | ) | |
| DEPARTMENT; CHIEF OF | ) | |
| POLICE, DOUGLAS WRIGHT; | ) | |
| AND ROBERT BARRINEAU, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

## NATURE OF THE CASE

Plaintiff Timmie Myles (hereinafter "Plaintiff Myles"), files this Complaint by and through his undersigned counsel of record against the above-named Defendants, Summerville Police Department, Chief of Police, Douglas Wright, and Robert Barrineau, a former corporal with the Summerville Police Department, who on the afternoon of August 20, 2020, mistakenly believed Plaintiff Myles had put a package of marijuana in his Chrysler 300, stopped Plaintiff Myles' vehicle, refused to tell Plaintiff Myles why he was being pulled over, grabbed Plaintiff Myles around the neck, pulled him from his vehicle, and struck him several times in the face, and later arrested Plaintiff Myles, despite contradictory police witness testimony. As a direct and proximate result of Defendants' conduct, Plaintiff Myles suffered physical, psychological, and actual injuries and damages, and in support thereof, alleges as follows:

## **VENUE, JURISDICTION, AND PARTIES**

1. This action is brought pursuant to the laws of the State of South Carolina, and the IV Amendment to the United States Constitution.  Plaintiff has complied with all precedent conditions set forth by the state of South Carolina.

2. At all times relevant to this Complaint, Defendant Summerville Police Department (hereinafter "Defendant SPD"), has been a governmental agency in South Carolina, organized and existing under the privilege of the laws of the state of South Carolina, and operating and conducting business in Dorchester County, South Carolina.  The business of Defendant SPD is conducted by Chief of Police Douglas Wright (hereinafter "Defendant Wright"), Defendant SPD's highest-ranking officer.  Defendant SPD and Defendant Wright, in his official capacity, are ultimately responsible for the actions and inactions that resulted in the injuries sustained by Plaintiff Myles.

3. Upon information and belief, at all times relevant to this Complaint, Defendant Wright was a resident of Dorchester County, South Carolina, and the highest member of Defendant SPD.  Ultimately, the decisions, actions, inactions, and omissions described herein were overseen, authorized and/or ratified by Defendant Wright, in his official capacity as the Chief of Police of Defendant SPD.

4. Upon information and belief, at all times relevant to this Complaint, Defendant Robert Barrineau (hereinafter "Defendant Barrineau") was a resident of Berkeley County, South Carolina and was employed by Defendant SPD as a corporal.

5. At all times relevant to this Complaint, Plaintiff Myles was a resident of Dorchester County, South Carolina at the time of the subject incident.

6. All of the acts or omissions giving rise to this action occurred in Dorchester County, South Carolina.

7. Venue is proper in the Charleston Division, as the majority of the acts and/or omissions complained of occurred within Dorchester County, and Defendants operate a businesses and/or governmental agency, and/or reside and/or work in Dorchester County, South Carolina.

8. This action also arises pursuant to and involves questions requiring the interpretation of the United States Constitution, and/or the laws and treaties of the United States.

9. Jurisdiction and venue are therefore proper before this court. 28 U.S.C. Section 1331.

## FACTUAL ALLEGATIONS

10. On August 20, 2020, Plaintiff Myles was stopped by numerous officers of Defendant SPD for no apparent reason given that Plaintiff Myles had committed no traffic violation and committed no crime.  Plaintiff Myles requested an explanation of the stop but was met by demands that Plaintiff Myles exit his vehicle.

11. Prior to August 20, 2020, Charleston Police officers had intercepted a FedEx package which was determined to contain marijuana.  The package was sent to a person not know by Plaintiff Myles, his wife, or his daughter, despite being sent to Plaintiff Myles' address.

12. That at least two officers of Defendant SPD were positioned in a wooded area behind Plaintiff Myles's home and mistakenly reported that Plaintiff Myles had picked up the FedEx package after the same had been delivered to the front porch of Plaintiff Myles's residence and put the package into his Chrysler 300 vehicle.

13. That Plaintiff Myles was very frightened by the sudden presence of numerous heavily armed officers from Defendant SPD, Plaintiff being African American and having seen

frequent news report of adult African American males having been killed by law enforcement officers.

14. That Defendant Myles was not only frightened but surprised and dismayed by being stopped and asked for an explanation in response to the officers' requests.

15. That Defendant Barrineau, then a corporal of Defendant SPD, opened the front driver's side door of Plaintiff Myles's vehicle, grabbed Plaintiff around the neck, hit Plaintiff Myles several times in the face, and, with the help of another officer, slammed Plaintiff Myles onto the pavement.

16. That the body worn cameras of the officers show the shaken Plaintiff Myles with injuries to his face, drool pouring from his mouth, crying and being questioned by the officers about the package.

17. That in response to the officers' questions, Plaintiff Myles continued to ask "What package?"

18. That the body worn cameras of the officers then record the officers discussing that there is no package in Plaintiff Myles's vehicle and that the information relayed by the officers positioned in the woods were not correct when they had communicated that Plaintiff Myles had picked the package up and put the same in his vehicle.

19. That Plaintiff Myles was then taken to the hospital by ambulance and after treatment arrested and charged with Possession with Intent to Distribute Marijuana in violation of S.C. Code Ann Section 44-53-0370 (B2)(1) and Disobeying A Lawful Order of Police in violation of Section 16-01(B).

20. All criminal charges against Plaintiff Myles were subsequently dismissed.

21. During the time that the charges against Plaintiff Myles were being dismissed, Defendant Barrineau's acts, including grabbing Plaintiff Myles around the neck, punching him several times in his face, and throwing him to the ground, were investigated by the South Carolina Law Enforcement Division, resulting in Defendant Barrineau being arrested on October 29, 2020 and charged with Third Degree Assault and Battery in violation of S.C. Code Ann. Section 16-3-600(3) and terminated by Defendant SPD.

22. That all the acts complained of herein pertaining to the stop, battery, injury, and arrest of Plaintiff Myles were recorded by the body worn cameras of the numerous officers involved.

23. The various cameras recordings clearly show Defendant Barrineau and the other officers refusing to tell Plaintiff Myles why he had been stopped, opening the driver's side front door of Plaintiff Myles's vehicle, Defendant Barrineau grabbing Plaintiff Myles left arm, Defendant Barrineau then grabbing Plaintiff Myles around the neck, Defendant Barrineau striking Plaintiff Myles several times in the face and Defendant Barrineau throwing Plaintiff Myles to the pavement with the help of other officers. Numerous other officers are seen observing the battery of Plaintiff Myles.

24. These same body worn camera recordings also show Plaintiff Myles respectfully saying that he did not know what was going on, that he was afraid to come out of his car for fear of being killed by the heavily armed officers, asking "What package?", telling the officers to look in his car to see if there was a package, and Defendant Barrineau denying having punched Plaintiff Myles in the face.

25. The body worn cameras also show the officers of Defendant SPD stating the package was not inside Plaintiff Myles's vehicle and that "Our surveillance teams got it wrong."

26. That subsequent to the events of August 20, 2020, a number of the officers involved in this stop of Plaintiff Myles' vehicle provided narratives to the Defendant SPD.

27. That the narrative of Officer Nazario Young includes the statement that, "I would speak to him away from his vehicle and away from any possible weapons inside," state that Barrineau attempted to apply pressure to Myles's mandible and instead of waiting, that Defendant Barrineau grabbed Plaintiff Myles around the neck.

28. That Officer Young's narrative also conspicuously fails to mention that Defendant Barrineau repeatedly struck Plaintiff Myles in the face. Officer Young also characterizes Plaintiff Myles as spitting, rather than saliva pouring out of the mouth of the dazed and injured Plaintiff.

29. That also in the narrative Officer Young attempts to justify the stop by stating that two ripped baggies containing loose green plant material were in the back of the vehicle despite the fact that Defendant SPD's K-9 had thoroughly sniffed the vehicle and indicated that drugs were not present. This narrative mentions these baggies despite the fact that the baggies are not mentioned in those documents documenting the charges against Plaintiff and detailing the criminal proceedings against him.

30. That the Supplement Narrative of Officer Robert Lobo offers the observance that "a brief struggle ensued" but also fails to mention that Defendant Barrineau struck Plaintiff Myles several times in the face.

31. That the Supplemental Narrative of Officer Cory Mosier offers the observation that "after this the driver was extracted and a brief struggle ensued" but also fails to mention that Defendant Barrineau struck Plaintiff Myles several times in the face.

32. That in yet another Supplemental Narrative, Detective David C. Barnette despite his position in relation to Defendant Barrineau and Plaintiff Myles, that Defendant Barrineau grabbed Plaintiff Myles around the neck before hitting him in the face, instead strangely characterizing the punch as "struck Myles with his right hand towards left cheek bone."

33. The Supplemental Narrative of Officer Jimmy Greenwalt similarly claims to observe Defendant Barrineau attempting, but failing to grab Plaintiff Myles's arm, Officer Greenwalt curiously states that "evidently Det. Cpl. Barrineau and Det. Barnette were able to extricate Myles in a safe manner," never mentioning that Defendant Barrineau grabbed Plaintiff Myles around the neck and struck him in the face repeatedly.

34. That Defendant Barrineau also wrote out a Supplemental Narrative. Defendant Barrineau, unlike the other officers, admits to grabbing Plaintiff Myles's neck. Defendant Barrineau further admits to striking Plaintiff Myles at least twice in the face despite the fact that the other officers claim to have observed the interaction believes Barrineau and Myles and failed to mention the blows to the Plaintiff's face.

35. That Officer Gage Angle, who undercover pretended to be a FedEx driver, recalls Plaintiff Myles saying, "I'll let him know it is here."

36. That Officer William Cline under oath, executed a warrant affidavit that included the allegation that Plaintiff Myles "claimed ownership of the box on the porch."

37. That only the observations of Defendant Barrineau come close to being consistent with the recordings of the body worn cameras and the subsequent findings made by the investigation of the South Carolina Law Enforcement Division.

38. Despite the contradictions and omissions which are obvious in the various narratives given to Defendant SPD's which contradict the narratives of Defendant Barrineau, the body worn

camera recordings, and the findings of the South Carolina Law Enforcement Division, none of these officers were internally punished or disciplined for their obvious omissions, intended to protect Defendant Barrineau.

39. Far from being an isolated incident, the deceptive conduct and excessive force evident in Defendants' acts and omissions has also been characteristic of other interactions with Dorchester County residents as discussed in the pleadings of such cases as Noah West and Jamica West vs. Town of Summerville, and Summerville Police Department, 2021-CP-18-0678, Thomas vs. Summerville Police Department, 2020-CP-18-0670, and other such cases.

40. In 2015 South Carolina passed a law in response to the shooting of Walter Scott requiring law enforcement officers to wear body cameras to discourage the use of excessive force and ensure officer accountability to the public and requiring supervisory personnel to review said videos to improve offer policing and training.

41. Defendant SPD did not even being to comply with South Carolina's law until 2019 when Defendant SPD officers were equipped with body cameras.

42. That Defendant Wright in this matter involving Plaintiff Myles has failed to correlate officers narratives, body worn camera recordings, and SCLED findings so as to identify inconsistencies and protective omissions on the part of Defendant SPD's officers.

43. That Defendant Wright's failure to closely scrutinize and investigate the inconsistencies between his various officers and narratives and to investigate the inconsistencies of the narratives to the body worn camera recordings has violated a policy, custom, patterns, and practice of unconstitutional policies and other use of excessive force.

## JOINT AND SEVERAL LIABILITY

44. Defendants are jointly and severally liable for the damages and injuries sustained by Plaintiff Myles, as Defendants' individual and collective actions and omissions actually and proximately caused the physical injury and mental injuries sustained by Plaintiff Myles.  Plaintiffs are entitled to damages pursuant to the laws of the State of South Carolina and the Constitution of the United States of America, including but not limited to the following:

    A.  Compensatory, actual and consequential damages;

    B.  Costs of this action;

    C.  Reasonable attorneys' fees and costs to Plaintiff on Federal 1983 Counts pursuant to 42 U.S.C. Section 1988;

    D.  Future medical expenses incurred from the date of incident as a result of physical and psychological injuries, and;

    E.  Any and all other and further relief as this Court may deem appropriate including pre and post judgment interest.

## COUNT 1
## VIOLATION OF UNITED STATES CONSTITUTION, AMENDMENT IV, 42-U.S.C. SECTION 1983, FOR THE USE OF EXCESSIVE FORCE – DEFENDANT BARRINEAU

45. Plaintiff hereby realleges the preceding paragraphs from the introduction through paragraph 44 as if repeated verbatim herein.

46. This is an action brought against Defendant Barrineau in his individual capacities, pursuant to Amendment IV to the United States Constitution, for Defendants' violations of 42 U.S.C. Section 1983 and Section 1988.

47. At all times material hereto, Defendant Barrineau was an employee and/or agent of Defendants Wright and SPD and acting within the course and scope of his employment, under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of SPD.

48. As set forth in this Complaint, on August 20, 2020 Defendant Barrineau used unnecessary and excessive force on Plaintiff Myles. The amount of force used by Defendant Barrineau was objectively unreasonable in light of the facts and circumstances confronting him.

49. By the time of this incident, the laws prohibiting Defendants' unconstitutional use(s) of force were clearly established under the Fourth Amendment of the United States Constitution.

50. Defendant Barrineau know, or should have known, and every reasonable officer in their position would have concluded, that the force used against Plaintiff Myles was excessive unjustifiable and unlawful.

51. In his capacity with the SPD, and upon information and belief, Defendant Barrineau has a history of abusing his authority and using excessive force against citizens in Dorchester County, South Carolina, depriving citizens of their bodily integrity. Defendant Barrineau had not been trained in Crisis Intervention Training, the proper use of force, de-escalation techniques, and/or non-lethal uses of force, or in the event of such training, disregarded the training, and failed to apply these principles in using force against Plaintiff Myles.

52. At the time of this incident, Plaintiff Myles was an unarmed forty-two year old grandfather who had merely been driving to buy soft drinks for his family, and Defendant Barrineau and the other officers failed to simply look for the presence of a package in Plaintiff Myles's vehicle. With inadequate information to support excessive force, grabbed Plaintiff

Myles around the neck and struck him several times in the face.  The use of force was unreasonable and clearly excessive.

53. Upon information and belief, throughout the entire incident the officer did not attempt to use a single de-escalation technique or to protect Plaintiff Myles from excessive force.

54. As a direct and proximate result of Defendant Barrineau's acts, omission, and clear use(s) of excessive force, Defendant Barrineau deprived Plaintiff Myles of the rights guaranteed to him by the Fourth Amendment of the United States Constitution, in particular, depriving him of the right to be free of excessive force and of bodily integrity.

55. Plaintiff is entitled to damages pursuant to the laws of South Carolina and the Constitution of the United States of America, including, but not limited to the following:

    a.  Compensatory, actual, and consequential damages;

    b.  Costs of this action;

    c.  Reasonable attorneys' fees and costs to Plaintiff on Federal 1983 Counts pursuant to 42 U.S.C. Section 1988;

    d.  Future medical expenses incurred from the date of incident as a result of physical and psychological injuries; and

    e.  Any and all other further relief as this Court may deem appropriate including pre and post judgment interest.

**COUNT II
CUSTOM/POLICY AND/OR PATTERN AND PRACTICE IN VIOLATION OF
UNITED STATES CONSTITUTION,
AMENDEMENT IV, 42 U.S.C. SECTION 1983, USE OF EXCESSIVE
FORCE – DEFENDANTS SPD AND CHIEF WRIGHT**

56. Plaintiff hereby realleges the paragraphs from the introduction through paragraph 55 as though repeated verbatim herein.

57. This is an action brought against Defendant SPD and Defendant Wright under the Fourth Amendment of the United States Constitution for violations of 42 U.S.C. Section 1983 and Section 1988.

58. Prior to August 20, 2020, Defendants SPD and Wright developed and maintained customs and policies and/or a pattern and practice that exhibited a deliberate indifference to the constitutional rights of persons in the Dorchester County community, including systemic deprivation of Fourth Amendment rights, which, in turn, caused the violation of Plaintiff Myles's rights. The systemic deprivation of rights constituted a repeated pattern of which Defendants SPD and Wright had personal and intimate knowledge, and these were obvious, flagrant, rampant and not isolated occurrences.

59. Defendants SPD and Wright maintained a custom and policy and/or pattern and practice of using, encouraging, and allowing the use of excessive force, deprivation of due process, of failing to adequately and properly train, retrain, supervise, and discipline officers, and failing to conduct fair, impartial and thorough investigations of complaints of police misconduct and officers' uses of excessive force.

60. Under Defendant Wright and even his predecessors, Defendant SPD has had a history of excessive force complaints and allegations of Constitutional rights' violations committed by its deputies, as well as allegations of failure to discipline, correct the misconduct, or properly train and/or supervise officers, which Defendants SPD and Wright have either ignored or endorsed through public statements and lack of investigation and internal remediation within SPD.

61. Together, this conduct demonstrates a perpetual and deliberate indifference to the constitutional rights of personal in the community, including Plaintiff Myles, whose

constitutional right to be free of excessive and unlawful force guaranteed by the IV Amendment of the United States Constitution were violated on August 20, 2020.

62. Defendants SPD and Wright were aware of problems with employees' actions, inactions, and omissions while acting under the color of law, and employees' uses of excessive force and violations of due process of law.

63. As the party ultimately responsible for the actions of the SPD, and Defendant Wright failed to investigate and/or reprimand such behavior and failed to discharge said officers for their misconduct thereby ratifying misconduct, resulting in a deliberate indifference to citizens' constitutional rights.

64. Defendants Wright's actions and inactions, and the SPD's lack of internal investigation and corrective action related to uses of force, created a culture among Defendant Wright's employees, including Defendant Barrineau, wherein officers and deputies did not fear any discipline related to use of excessive force.

65. Defendants SPD and Wright maintained a policy and custom and/or pattern or practice of failing to properly train officers, including but not limited to, how to use appropriate levels of force, how to properly assess levels of threat, the use of de-escalation techniques and the use of non-lethal force, and application of due process of law. Defendants' failures, enunciated above, amount to a deliberate indifference to Plaintiff Myles's constitutional rights.

66. Defendants SPD and Wright also maintained a policy and custom and/or pattern or practice of failing to conduct fair and impartial investigations into officer misconduct, uses of excessive force, batons, and police shootings, perpetuating this deliberate indifference to citizens' constitutional rights.

67. For example, following the beating of Plaintiff Myles, Defendant Wright should have noticed the inconsistencies between officers' narratives and the body worn camera recordings. These material allegations in these narratives were not correct or complete, and yet, according to the deputies own personnel files, which should contain every internal investigation against the deputies, Defendant Wright has never corrected or disciplined any officer associated with the August 20, 2022 incident complained of except for Defendant Barrineau.

68. The acts of misconduct by the SPD officers, including previous conduct of individual Defendant Barrineau were ratified, perpetuated, tolerated and not reprimanded by Defendants SPD and Wright. Thus, Defendants encouraged constitutional violations perpetrated by its officers.

69. The policies and customs and/or patterns and practices of Defendants SPD and Wright fostered an environment where officers believed that their misconduct would not be subject to monitoring by supervisors, would not be subject to proper investigations, and would not lead to any sanction or discipline, but would instead be tolerated and ratified by Defendants.

70. Defendants SPD and Wright had evidence of SPD's officers customs and policies and/or patterns and practices of violating citizens' constitutional rights under the Fourth Amendment of the United States Constitution, including uses of excessive force, failure to properly train and supervise officers, failure to conduct fair and impartial investigations, covering up officers' misconduct, and failure to terminate officers who violated citizens' constitutional rights.

71. As reflected in this Complaint, Defendants SPD and Wright attempted to characterize Defendant Barrineau's excessive force as an isolated event that would not be tolerated, despite the other officers' not only observing, but omitting mention of Defendant Barrineau's use of excessive force.

72. Upon information and belief, Defendant Barrineau had not been properly trained on how to use appropriate levels of force, how to properly assess levels of threat, the use of de-escalation techniques and the use of non-lethal force, how to use police canines, and on due process of law, or, in the event of such training, said training was inadequate.

73. In addition, Defendant Barrineau was not properly supervised or disciplined by Defendants SPD and Wright, as clearly evidenced by Defendant Wright's failure to discipline the officers for the obvious omissions in their narratives and the flagrant inconsistencies communicated by the officers during the course of the investigation.

74. Defendants SPD and Wright's failures to properly train, discipline and/or terminate the officers ratified the officers' misconduct, placed Plaintiff Myles in danger, and continues to place the citizens of Dorchester County in danger.

75. As set forth in this Complaint, and demonstrated by the excessive number of uses of force by SPD involving failure to use any de-escalation principles before deploying force, Defendant SPD has an unnecessary pattern and practice and/or custom and policy of unconstitutional conduct, including the use of excessive force, failure to conduct fair and impartial investigations, and failure to properly train and supervise officers, failure to discipline and/or terminate officers.  Defendants SPD and Wright have ratified and perpetuated unconstitutional conduct and have exhibited a deliberate indifference to the constitutional rights of the citizens of Dorchester County, and were the moving force

behind the violation of unarmed Plaintiff Myles's constitutional rights pursuant to the Fourth Amendment of the United States Constitution.

76. The above fact denotes a deliberate indifference on the part of Defendants SPD and Wright as policy makers and custom enforcers, to uphold the constitutional rights of citizens of Dorchester County, such as Plaintiff Myles, including citizens' rights to be free from excessive force. Defendants' numerous failures, actions and inactions that perpetrated and ratified unconstitutional policing were the moving force behind Defendant Barrineau's actions, and actually proximately caused the violation of Plaintiff Myles's clearly established and constitutionally guaranteed rights.

77. Plaintiff is entitled to damages pursuant to the laws of South Carolina and the Constitution of the United States of America, including but not limited to the following:

    a.   Compensatory, actual and consequential damages;

    b.   Costs of this action;

    c.   Reasonable attorneys' fees and costs to Plaintiff on Federal 1983 Counts pursuant to 42 U.S.C. Section 1988;

    d.   Future medical expenses incurred from the date of incident as a result of physical and psychological injuries; and

    e.   Any and all other and further relief as this Court may deem appropriate including pre and post judgment interest.

## COUNT III
## GROSS NEGLIGENCE – DEFENDANT SPD

78. Plaintiff hereby realleges the paragraphs from the introduction through paragraph 77 as though repeated verbatim herein.

79. This is an action for gross negligence brought against Defendant SPD under the laws of the state of South Carolina.

80. At all times relevant to this Complaint, Defendants Wright and Barrineau were employees and/or agents of SPD, and acting within the course and scope of their employment, in furtherance of the interests of SPD and with SPD's knowledge and consent.

81. Defendant SPD is liable for the actions and omissions of its employees and/or agents that gave rise to this action, including the actions of Defendant Barrineau.

82. Defendant SPD by and through its employees and agents, owed a duty to Plaintiff Myles, including the duty to act in a prudent and reasonable manner with regards to his health and safety, a duty against covering up known instances of misconduct, and a duty to ensure that Plaintiff Myles, in interacting with agents of SPD remained free from excessive and unlawful force.  Defendant SPD also owed a ministerial duty to provide responsible and effective operations of a police department and to establish proper policies, customs, and regulations of its department.  Defendant SPD owed a legal duty, to properly train and retrain said officers, to properly correct and remediate any known deficiencies within its officers, including deficiencies by highest ranking officer, Chief Wright, and to ensure officers used only lawful force.

83. Upon information and belief, prior to the incident relayed herein on August 20, 2020, Defendant SPD had a custom or policy of using excessive and unnecessary force, failing to engage in de-escalation principles, failing to properly train, retrain, supervise, and discipline officers, including Defendant Barrineau and further had a pattern and/or practice of failing to adequately prevent and respond to uses of excessive force, and to apply de-escalation techniques, non-lethal force, crisis intervention training, and further, Defendant

SPD also had a custom or policy of failing to conduct meaningful fair and impartial investigations against officers accused of excessive force violations. The aforementioned failures amount to violations of nondiscretionary duties owed to citizens of Dorchester County, including Plaintiff Myles. As such, Defendant breached its duties including ministerial duties owed to Plaintiff Myles.

84. Defendant SPD's failure to reprimand and intervene and/or take corrective action against its officers is evidence that Defendant SPD ratified and promulgated misconduct, and provides further evidence of its breach of duties owed to the citizens of Dorchester County, including Plaintiff Myles.

85. Upon information and belief, in the years prior to the incident involving Plaintiff Myles, despite numerous reports involving uses of force by its officers and employees, Defendant SPD inadequetly reviewed, or formally amended training and/or policies and/or disciplinary measures and/or supervision techniques, to eradicate unjustifiable uses of force. Defendant SPDs continued and repeated uses of unnecessary force, failure to employ de-escalation techniques, and failure to engage in even minimal review or investigation into uses of force resulted in Defendant Barrineau's breaching the duty they owed by showing an absence of care and/or willfully, wantonly, and recklessly disregarding the life and right of Plaintiff Myles.

86. Defendant SPD knew or should have known of the dangers posed by its failures illustrated in this Complaint, including failures to properly train, re-train and supervise its officers, negligently retraining officers, failing to conduct fair and impartial investigations, and using unnecessary and excessive force, and that said actions and inactions were reckless

18

and/or constituted the total absence of care likely to result in violations of citizens' rights, and as such were reasonably foreseeable.

87. Defendant SPD's actions and omissions, by and through its authorized agents, were unreasonable, constituted the total absence of care, and breached duties owed to Plaintiff Myles and actually and proximately contributed to and/or caused the injury to Plaintiff Myles.

88. Each incident of force used by Defendant SPD's officers in this matter constitutes a separate occurrence.

89. Plaintiff is entitled to damages pursuant to the laws of South Carolina and the Constitution of the United States of America, including but not limited to the following:

    a.  Compensatory, actual and consequential damages;

    b.  Costs of this actions;

    c.  Reasonable attorneys' fees and costs to Plaintiff;

    d.  Future medical expenses incurred from the date of incident as a result of physical and psychological injuries;

    e.  Punitive damages; and

    f.  Any and all other and further relief as this Court may deem appropriate including pre and post judgment interest.

**COUNT IV**
**INTENTIONAL/RECKLESS INFLICTION OF**
**EMOTIONAL DISTRESS – DEFENDANT SPD**

90. Plaintiff hereby realleges the introduction of through paragraph 89 as though repeated verbatim herein.

91. At all times relevant to this Complaint, individual Defendant Barrineau was an employee and/or agent of Defendant SPD and was operating within the course and scope of his employment of SPD, in furtherance of the interests of Defendant SPD and with Defendant SPD's consent.

92. By and through its authorized agents, on August 20, 2020, Defendant SPD created a situation in which officers conducting surveillance relayed false information, resulting in an unnecessary stop and making it appear Plaintiff Myles was involved in criminal activity and potentially dangerous. At no point during this encounter did Defendant SPD have accurate knowledge that Plaintiff Myles had committed any offense.

93. During the entirety of the encounter with Defendant SPD, Plaintiff Myles was reasonably in fear for his life and safety, and this fear continued as he was transported to a hospital for emergency care.

94. Each incident and/or instance of conduct complained of constitutes a separate occurrence and use of force.

95. To this day, Defendant SPD has never articulated any offense Plaintiff Myles committed prior to being stopped that would justify this use of massively excessive force, except officers mistaken knowledge and perceptions.

96. During the entire interim of Defendant SPD's uses of multiple types of force against Plaintiff Myles, Defendant SPD never attempted de-escalation.

97. Defendant SPD's conduct described herein was perpetrated in a reckless and/or wanton disregard for Plaintiff Myles and inflicted severe emotional distress upon him, surrounding his vehicle with heavily armed officers, and then handcuffing him while he stood injured and restrained and in need of medical care, is so extreme and outrageous as to shock the

conscience, exceeds all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community.

98. Defendant SPD's actions caused Plaintiff Myles' severe emotional distress; and his emotional distress is so severe that no person can be expected to endure it.

99. As a direct and proximate result of Defendant SPD's intentional and/or reckless infliction of emotional distress, Plaintiff Myles suffered ongoing and permanent damages.

100.    Plaintiff is entitled to damages pursuant to the laws of South Carolina and the Constitution of the United States of America, including but not limited to the following:

a.  Compensatory, actual and consequential damages;

b.  Costs of this action and attorneys' fees;

c.  Future medical expenses incurred from the date of this incident as a result of physical and psychological injuries; and

d.  Any and all other and further relief as this Court may deem appropriate, including pre and post judgement interest.

## COUNT V
## FALSE IMPRISONMENT AS TO DEFENDANT SPD

101.    Plaintiff realleges the paragraphs from the introduction through paragraph 100 as through repeated verbatim herein.

102.    Defendant SPD physically restrained Plaintiff Myles by handcuffing his wrists behind his back incident to arresting Plaintiff Myles for Possession of Marijuana with Intent to Distribute and Failure to Obey a Lawful Police Order.

103.    That Defendant SPD did make an intentional decision to arrest Plaintiff Myles.

104.     That the arrest was unlawful in that the officers positioned in the woods behind Plaintiff Myles's home knew, or should have known, that their view of Plaintiff Myles, his front porch, and the package in question was questionable and knew they should not inform the other officers awaiting information that Plaintiff Myles had picked up the package unless they were certain that he had done so.

105.     That the arrest was also unlawful because those officers in close proximity to, and communicating with Plaintiff Myles could see into Plaintiff Myles vehicle sufficiently to determine that a package was not inside Plaintiff's vehicle and Plaintiff clearly did not know what the officers were referring to as to him having a package.

106.     Plaintiff is entitled to damages pursuant to the laws of South Carolina and the Constitution of the United States of America, including but not limited to the following:

    a.   Compensatory, actual, and consequential damages;

    b.   Costs of this action and attorneys' fees;

    c.   Future medical expenses incurred from the date of incident as a result of physical and psychological injuries; and

    d.   Any and all other relief as this Court may deem appropriate, including pre and post judgment interest.

## **TRIAL BY JURY**

107.     Plaintiff Myles hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

108.     WHEREFORE, Plaintiff respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by South Carolina law and the United States Constitution, including but not limited to the following:

a. Compensatory, actual and consequential damages to Plaintiff;

b. Costs of this action and attorneys' fees to Plaintiffs;

c. Past and future medical expenses incurred as a result of physical and psychological injuries; and

d. Any and all other and further relief as this Court may deem appropriate, including pre and post judgment interest.

Respectfully Submitted,


By: *s/H. Asby Fulmer, III*
H. Asby Fulmer, III
314 West 5th North Street
P.O. Box 1330
Summerville, SC 29484
Telephone: (843) 821-3100
Email: hfulmer@msn.com
S.C. Bar No. 613018

August 19, 2020

Summerville, South Carolina